(C. D. 227)

INTERNATIONAL TOBACCO CO. v. UNITED STATES

United States Customs Court, Third Division

(Decided October 11, 1939)

Booth & Conner (Alexander Galt Booth of counsel) for the plaintiff.
Webster J. Oliver, Assistant Attorney General (Samuel D. Spector, special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

EVANS, Judge: This is an action against the United States wherein the plaintiff seeks to obtain a refund of certain amounts of money claimed to have been illegally collected and paid upon an importation

of filter tip machines designed to place filter tips on cigarettes. Entry was made on April 22, 1937, at the port of Louisville, Ky. The machine in question was made in Austria and was shipped to England on order from an English firm, and was entered in that country under the provisions of their tariff law which provided that such machinery would be exempt from import duty if no similar machine was in fact made in England. The importer was required, however, to deposit the amount of the duty which was retained pending a determination of the question as to whether or not a similar machine was made in England. Upon receipt of the machine in England it was determined to reship the same to the International Tobacco Co. of America, the plaintiff herein, at Louisville, Ky. The shipment was made before the plaintiff had been able to satisfy the authorities of Great Britain that its importation was not dutiable under the tariff law of that country. The name of the English company was Peter Jackson (Overseas) Ltd. When it was determined to ship the machine to the United States a representative of the English firm consulted the American consular authorities as to the best method of preparing the consular invoice so as to show the exact facts, with the result that the consular invoice was prepared carrying, among other data, this notation.

One Filter Tip Assembly Machine

giving a purchase price of £1,710 to which was added English import duty of £360 5s. 0d. On the declaration of the shipper on the reverse side of this document appears the following:

I further declare that the price to purchaser and domestic value at Port of Shipment will be amended to £1,710. provided that the English Customs authorities allow our claim for the free importation of this machine into England & refund £360. 5s. paid to them pending the result of our claim.

When the plaintiff herein received the consular invoice at Louisville, the port of entry, he prepared on customs Form 7501 a consumption entry but he did not follow, in giving his information thereon, the data as it appeared on the face of the consular invoice, but entered "1 case Tobacco Machine" at a value in foreign money of £2,070 5s. 0d., being the total amount plus the import duty above noted. However, when this entry, together with the aforesaid consular invoice, now constituting entry 243, was transmitted to the customs officials on April 22, 1937, the plaintiff wrote in a letter dated April 22, 1937, as follows:

We have already handed you a Consular Invoice in duplicate, and you have received a third or triplicate copy of Consular Invoice from New York. You will note that on said Consular Invoice there is a reference to a revaluation of the filter tip assembly machine, which shows on said invoice at £1,710. The domestic value of this machine at the port of shipment is not yet settled, owing to the fact that the value of the import duty on this machine into England from Austria, the country of origin has not yet been settled. Meanwhile, a deposit of £360. 5. 0

has been paid to the British Customs Authorities, and this amount has been included tentatively in the selling price of Peter Jackson (Overseas) Ltd. to International Tobacco Company of America, Incorporated. Should this amount be reduced, an amended invoice will be sent to us to enable final settlement to be made with the U. S. Customs Authorities. Otherwise, we will confirm that the final selling price is as shown on the present invoice.

Under the above circumstances, the International Tobacco Company of America, Incorporated, hereby reserves the right to produce an amended invoice at a later date, and we now request you to withhold your appraisement in the meantime. We understand that the Customs Regulation which allows this form of procedure is No. 782. If you will refer to the Declaration of the Consular Invoice, you will notice that this point has been covered.

This letter was addressed to the United States Customs Appraiser. It must be assumed that the documents reached the appraiser but it is clear from the statments in this letter that they were not before him for the purpose of appraisement, because the importer specifically requested that appraisement be withheld.

Considerable correspondence passed between the collector of customs, the Bureau of Customs, and the importer in regard to the proper value of this importation which we do not deem it necessary to review, although all the correspondence was admitted in evidence without objection. Suffice it to say that the Bureau of Customs in a letter under date of November 19, 1938, received at Louisville, Ky., on November 21, 1938, stated:

An inspection of the documents submitted indicates that the return of the duty deposited was in no way contingent upon the exportation of the machine. Upon a reconsideration of the evidence offered by the importer, the Bureau is of the opinion that the duty deposited by the importer upon the introduction of the machinery into Great Britain does not constitute a part of the proper appraised value of the machinery.

In the meantime, on three dates subsequent to the date of filing the entry, to wit, January 26, 1938, April 8, 1938, and April 27, 1938, the importer renewed its request to suspend appraisement, during all of which times it was endeavoring to procure what it finally did procure, satisfactory evidence that the machine was not dutiable on its entry into Great Britain. Nevertheless, on November 21, 1938, the date the Commissioner of Customs' letter was received in Louisville, Ky., the merchandise was appraised without giving any notice whatever to the importer that he should complete his amended entry. Thereupon the entry was liquidated and duty was assessed upon the basis of the value appearing in the entry paper, viz, £2,070 5s. 0d., and the importer filed the present protest from such liquidation and assessment.

It is possible that under the broad definition of the term "entry" the amended consular invoice, which gave all the information that could possibly have been included in a formal consumption entry, could be held to constitute an amendment to said entry. The pro-

posed amendment did not consist of giving new information or any new facts or figures which had not already been presented. The statute (sec. 487, Tariff Act of 1930) gives an importer the right to amend his entry. That section is as follows:

SEC. 487. *VALUE IN ENTRY—AMENDMENT.*

The consignee or his agent may, under such regulations as the Secretary of the Treasury may prescribe, at the time entry is made, or at any time before the invoice or the merchandise has come under the observation of the appraiser for the purpose of appraisement, make in the entry such additions to or deductions from the cost or value given in the invoice as, in his opinion, may raise or lower the same to the value of such merchandise.

This right did not always exist but was granted by Congress in an effort to avoid imposing hardships upon honest importers and ought to be given the construction that will accomplish the purpose intended. Under the definition of entry as contained in the regulations (Article 286, Customs Regulations of 1937) and the decisions of this court it is our opinion that the consular invoice is a part of the consumption entry and where that contains all the information necessary to warrant the amendment it should be so considered. So far as the record shows, this consular invoice was filed before either the invoice or the merchandise had come under the observation of the appraisers for the purpose of appraisement, and the importer had established his right under the law to make the amendment requested. Said importer was prevented from completing the data required by the regulations through failure to receive a notice of the final ruling of the Commissioner of Customs. The local officials admit, according to the correspondence in evidence, that it was an oversight on their part in failing to notify the importer to complete his amendment. In the letter of the Commissioner of Customs to the collector at Louisville, dated December 9, he recites:

You believe that the importer tried to do everything possible and that there was an error on your part in failing to advise it, in order that an amended entry might be filed prior to the time the merchandise came under the observation of the appraiser for the purpose of appraisement.

Under these circumstances it is our opinion that the importer should have been permitted to file any additional paper required by the collector at Louisville in order to complete his attempted amended entry as of the date when the collector at Louisville was advised of the decision of the commissioner to the effect that the so-called English tariff duty did not constitute part of the dutiable value, in order that said importer may have an entered value in conformity with the one he expressly requested authority to make.

We therefore hold that the plaintiff's claim that he should have been allowed to amend his entry is sustained and such amendment should be allowed as of the time when the collector received the information from the commissioner of customs giving a final decision of

the Bureau of Customs as to the dutiability of the item in question. Such amendment should be allowed to be filed *nunc pro tunc*. We so hold.

Judgment will be rendered accordingly. It is so ordered.